UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

DONNA M. MIKESELL,

                Plaintiff,

vs.                          Case No. 2:12-cv-606-FtM-29DNF

FIA CARD SERVICES, N.A., and BANK OF
AMERICA, N.A.,

                Defendants.
_____

**OPINION AND ORDER**

This matter comes before the Court on Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint (Doc. #44) filed on April 4, 2013. Plaintiff filed a Response to the Motion to Dismiss (Doc. #45) on April 18, 2013.

**I.**

The facts alleged in the Second Amended Complaint are as follows: In August 2007, plaintiff Donna Mikesell's husband, Roger Mikesell, applied for, received, and used a credit card from Bank of America. (Doc. #40, ¶ 11.) Plaintiff did not join her husband in the credit card application and did not authorize her husband to apply for the credit card on her behalf. (Id. ¶ 12.) Following the death of her husband on January 4, 2011, plaintiff sent Bank of America and/or FIA Card Services (defendants) her husband's death certificate. (Id. ¶ 17.) After receiving the death certificate, defendants started sending plaintiff credit card statements identifying her as the account holder. (Id. ¶ 18.)

In addition to sending the credit card statements, defendants began calling plaintiff on a weekly basis regarding the credit card debt. Plaintiff became increasingly agitated by the calls because the callers would imply that she was a liar and/or stupid when she tried to explain that she was not liable for the debt. (Id. ¶ 19.) Even though plaintiff cried during some of the calls and yelled during others, the callers continued to argue that plaintiff was liable for the debt. In April 2011, plaintiff told defendants' representatives to stop calling, but they refused to do so. (Id. ¶ 20.) In an attempt to help her mother resolve this matter, plaintiff's daughter made at least eleven calls to various departments at Bank of America between April 14, 2011, and May 19, 2011. (Id. ¶ 21.) Plaintiff's attorney eventually contacted defendants to explain that plaintiff never opened the account, never joined the account as an applicant, and never used the account. (Id. ¶ 22.) Plaintiff's attorney also informed defendants that no further contact with plaintiff should be made. Even though FIA Card Services acknowledged this request on June 3, 2011, plaintiff received a call from Pollack & Rosen, a law firm representing defendants, regarding a collection matter on January 9, 2012. (Id. ¶ 23.)

The Second Amended Complaint sets forth four counts based on state law (Counts I - IV) and one count based on federal law (Count V). Counts I and III, brought pursuant to the Florida Consumer Collection Practices Act (FCCPA), allege violations of Fla. Stat.

§§ 559.72(7), (9), and (18). Counts II and IV allege that defendants are liable for the tort of intentional infliction of emotional distress. Finally, Count V alleges violations of the Fair Credit Reporting Act (FCRA), 15 U.S.C. §§ 1681 to 1681x.

**II.**

In deciding a Rule 12(b)(6) motion to dismiss, the Court must accept all well-pleaded factual allegations in a complaint as true and take them in the light most favorable to plaintiff. Erickson v. Pardus, 551 U.S. 89, 94 (2007); Christopher v. Harbury, 536 U.S. 403, 406 (2002); Bingham v. Thomas, 654 F.3d 1171, 1175 (11th Cir. 2011). "To survive dismissal, the complaint's allegations must plausibly suggest that the [plaintiff] has a right to relief, raising that possibility above a speculative level; if they do not, the plaintiff's complaint should be dismissed." James River Ins. Co. v. Ground Down Eng'g, Inc., 540 F.3d 1270, 1274 (11th Cir. 2008) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555-56 (2007)). See also Edwards v. Prime, Inc., 602 F.3d 1276, 1291 (11th Cir. 2010). The former rule--that "[a] complaint should be dismissed only if it appears beyond doubt that the plaintiffs can prove no set of facts which would entitle them to relief," La Grasta v. First Union Sec., Inc., 358 F.3d 840, 845 (11th Cir. 2004)--has been retired by Twombly. James River Ins. Co., 540 F.3d at 1274. Thus, the Court engages in a two-step approach: "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise

-3-

to an entitlement to relief." Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678.

## III.

Defendants assert that the Second Amended Complaint fails to state a claim under the FCRA because plaintiff failed to allege that she filed a dispute with a consumer reporting agency. (Doc. #44, p. 8.) In order to maintain a private right of action for a violation of 15 U.S.C. § 1681s-2(b), the furnisher of credit information must first receive notice of the consumer's dispute from a consumer reporting agency. Peart v. Shippie, 345 F. App'x 384, 386 (11th Cir. 2009); Green v. RBS Nat'l Bank, 288 F. App'x 641, 642 (11th Cir. 2008). Plaintiff concedes that she failed to allege that the requisite notice was given to the consumer reporting agencies. Accordingly, defendant's motion to dismiss Count V is granted, without prejudice.

## IV.

The second contention raised in defendants' motion to dismiss is that Florida's litigation privilege bars plaintiff's claims in Counts I and II to the extent that they are based on the allegations that FIA Card Services filed a lawsuit to collect the disputed debt. (Doc. #44, p. 9.) Florida's litigation privilege

affords absolute immunity for acts occurring during the course of judicial proceedings "so long as the act has some relation to the proceeding." Echevarria, McCalla, Raymer, Barret & Frappier v. Cole, 950 So. 2d 380, 384 (Fla. 2007) (citing Levin, Middlebrooks, Mabie, Thomas, Mayes & Mitchell, P.A. v. Unites States Fire Ins. Co., 639 So. 2d 606, 608 (Fla. 1994)). However, "[t]he mere existence of litigation does not attach the privilege to every communication between litigants; rather, the communication must be analyzed in light of its relation to the litigation." North Star Capital Acquisitions, LLC v. Krig, 611 F. Supp. 2d 1324, 1331 (M.D. Fla. 2009).

Here, plaintiff simply alleges that FIA Card Services filed a lawsuit regarding the debt. (Doc. #40, ¶¶ 11, 34, 41.) Because the filing of a lawsuit clearly relates to a judicial proceeding, it cannot serve as the basis for plaintiff's claims. See Perez v. Bureaus Inv. Group No. II, LLC, No. 1:09-CV-20784, 2009 WL 1973476, at *3 (S.D. Fla. July 8, 2009); Gaisser v. Portfolio Assocs., LLC, 571 F. Supp. 2d 1273, 1280 (S.D. Fla. 2008). Therefore, plaintiff's claims, to the extent that they are based on the allegations that FIA Card Services filed a collection lawsuit, are barred by Florida's litigation privilege. The offending language will be stricken.

**V.**

To establish a cause of action for the intentional infliction of emotional distress, a plaintiff must show that the defendant's

intentional conduct was "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Metro Life Ins. Co. v. McCarson, 467 So. 2d 277, 278-79 (Fla. 1985). See also Gallogly v. Rodriguez, 970 So. 2d 470, 471 (Fla. 2d DCA 2007). The conduct must be evaluated on an objective basis; the plaintiff's subjective response to the conduct does not control. McCarson, 467 So. 2d at 278-79. However, a defendant's knowledge of a person's particular susceptibility to emotional distress is relevant in determining whether the conduct is extreme or outrageous; however, the mere fact that the defendant knows the person's feelings will be hurt by the conduct is not enough; it must be outrageous. Liberty Mut. Ins. Co. v. Steadman, 968 So. 2d 592, 595-96 (Fla. 2d DCA 2007) (citing Restatement (Second) of Torts § 46 cmt. f). Whether the alleged conduct satisfies this high standard is a legal question "for the court to decide as a matter of law." Vance v. Southern Bell Tel. & Tel. Co., 983 F.2d 1573, 1575 n.7 (11th Cir. 1993) (quoting Baker v. Florida Nat'l Bank, 559 So. 2d 284, 287 (Fla. 4th DCA 1990)). See also Gandy v. Trans World Computer Tech. Grp., 787 So. 2d 116, 119 (Fla. 2d DCA 2001).

Plaintiff alleges that defendants, knowing of plaintiff's emotionally weakened state, made repeated efforts to collect the debt even though plaintiff told them she was not liable for the

account and would imply that she was stupid and/or a liar.[1] This conduct simply does not rise to level of egregious conduct required to state a claim for intentional infliction of emotional distress. See Williams v. Worldwide Flight Servs., Inc., 877 So. 2d 869, 870 (Fla. 3d DCA 2004) (plaintiff must allege more than mere insults, indignities, threats, or false accusations). See also Neely v. Wells Fargo Financial, Inc., No. 8:12-cv-542-T-33AEP, 2012 WL 5949106, at *3 (M.D. Fla. Nov. 28, 2012) (holding that plaintiff failed to state a claim for intentional infliction of emotional distress when plaintiff alleged that defendant called her often, rudely, at inconsiderate hours, and at embarrassing locations because defendant did nothing more than call); Oppenheim v. I.C. System, Inc., 695 F. Supp. 2d 1303, 1310 (M.D. Fla. 2010) (holding that thirty-five to forty telephone calls over a three month period regarding an outstanding debt did not constitute outrageous conduct); Kent v. Harrison, 467 So. 2d 1114, 1115 (Fla. 2d DCA 1985) (holding that numerous telephone calls, designed and undertaken to cause distress and to annoy plaintiff, did not constitute outrageous conduct). Accordingly, Counts II and IV of the Second Amended Complaint are dismissed with prejudice.

---

[1] Plaintiff also alleges, "on information and belief," that defendants have a practice of targeting grieving spouses to collect the debts of the deceased even though defendants know the spouse is not liable. (Doc. #40, ¶ 24.) This allegation, however, is nothing more than a naked assertion devoid of any factual enhancement; therefore, the Court need not accept it as true. See Iqbal, 556 U.S. at 678.

**VI.**

Counts I and III of the Second Amended Complaint allege violations of Fla. Stat. §§ 559.72(7), (9), and (18). Defendants contend that plaintiff failed to state a claim under each section.

Pursuant to Section 559.72(7), a person may not "[w]illfully communicate with the debtor or any member of her or his family with such frequency as can reasonably be expected to harass the debtor or her or his family, or willfully engage in conduct which can reasonably be expected to abuse or harass the debtor or any member of her or his family." Fla. Stat. § 559.72(7). In determining whether the debt collector's actions were willful and frequent, a court should consider the number of communications, the date of the communications, and the content of the communications. Breeders v. Gulf Coast Collection Bureau, 632 F. Supp. 2d 1125, 1129 (M.D. Fla. 2009). Defendants argue that plaintiff's allegations cannot, as a matter of law, support a claim for harassment under Fla. Stat. § 559.72(7) because the calls did not occur "with such frequency as can reasonably be expected to harass." (Doc. #44, p. 13.)

According to defendants, "no more than 16 'weekly' calls" can be inferred from the facts alleged in the Second Amended Complaint. (Id.) The Court, however, is unable to determine the number of relevant calls actually made and such a determination would be inappropriate at this stage of the litigation. See Fini v. Dish Network LLC, No 6:12-cv-690-Orl-22TBS, 2013 WL 3815627, at *9 (M.D.

Fla. Mar. 6, 2013). Accordingly, defendants' Motion to Dismiss plaintiff's claims under Fla. Stat. § 559.72(7) is denied.

In order to establish liability under Fla. Stat. § 559.72(9), a plaintiff must show that the defendant attempted to enforce a debt that it knew was not legitimate. McCorriston v. L.W.T., Inc., 536 F. Supp. 2d 1268, 1279 (M.D. Fla. 2008). Defendants, relying on Reese v. JPMorgan Chase & Co., 686 F. Supp. 2d 1291 (S.D. Fla. 2009), contend that the presence of plaintiff's name on the credit card application acts as a complete defense to the claim. (Doc. #44, p. 18.) In Reese, the plaintiff alleged that the defendant attempted to collect a debt that it knew was invalid, but conceded that a payment made to the originator of the loan was never applied to the account before it was transferred to the defendant. Reese, 686 F. Supp. 2d at 1312. The court concluded that the defendant properly relied on its records because the plaintiff failed to plead any facts to the contrary. Id. Here, the presence of plaintiff's name on the credit card application does not act as a complete defense as defendants suggest because the factual allegations in the Second Amended Complaint show that defendants were informed by plaintiff and her attorney that she never opened the account, never joined the account as an applicant, and never used the account. The Court finds that this is sufficient to state a claim under Fla. Stat. § 559.72(9).

Section 559.72(18) makes it unlawful to communicate with a debtor if the person knows the debtor is represented by counsel.[2] Fla. Stat. § 559.72(18). Defendants contend that Fla. Stat. § 559.72(18) requires an allegation that Polack & Rosen knew plaintiff was represented by counsel. (Doc. #44, p. 15.) In response, plaintiff implies that such an allegation is not required because Pollack & Rosen's actions constitute an indirect communication in violation of Fla. Stat. § 559.72(18). The Court agrees with plaintiff.

In Kelliher v. Target National Bank, 826 F. Supp. 2d 1324, 1330 (M.D. Fla. 2011), a case cited by both parties, the court rejected the defendant's argument that the debt collector must have actual knowledge because a creditor should not be able to circumvent the FCCRA by withholding its knowledge of a debtor's representation from the debt collector. Such reasoning applies to this case as well.

Plaintiff alleges that she received a call from Pollack & Rosen, a law firm representing defendants, regarding a collection matter even though defendants knew she was represented by counsel. (Doc. #40, ¶ 23.) Because such action may constitute an indirect communication regarding a debt, the Court finds that plaintiff has

---

[2]The FCCPA defines "communication" as "the conveying of information regarding a debt directly or indirectly to any person through any medium." Fla. Stat. § 559.55(5).

plausibly stated a claim under Fla. Stat. § 559.72(18). Therefore, defendants' motion to dismiss Counts I and III is denied.

Accordingly, it is now

**ORDERED**:

1. Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint (Doc. #44) is **GRANTED** in part and **DENIED** in part as follows:

    A. The portions of Counts I and II alleging that FIA Card Services filed a collection lawsuit are **DISMISSED WITH PREJUDICE**. The offending language in paragraphs 11, 34, and 41 is stricken, and the counts may otherwise proceed.

    B. Counts II and IV are **DISMISSED WITH PREJUDICE**.

    C. Count V is **DISMISSED WITHOUT PREJUDICE**.

    D. The motion is otherwise **DENIED**.

2. Plaintiff may file a third amended complaint **WITHIN TWENTY ONE (21) DAYS** of this Opinion and Order.

**DONE AND ORDERED** at Fort Myers, Florida, this  25th  day of October, 2013.

                                        JOHN E. STEELE
                                      United States District Judge

Copies:

Counsel of record